UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 18-CV-5618 (ENV) (RER)

———————————

SULLIVAN ET AL.,

Plaintiff,

VERSUS

CHAMPION ELECTRICAL MECHANICAL BUILDERS CORP. ET AL.,

Defendants.

———————————

**REPORT & RECOMMENDATION**

**February 25, 2020**

———————————

**TO THE HONORABLE ERIC N. VITALIANO**
**SENIOR UNITED STATES DISTRICT JUDGE**

    Plaintiffs[1] commenced this action alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*., the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq*., and the common law,[2] pursuant to an alleged violation of the 2015 Collective Bargaining Agreement (the "CBA"). (Dkt. No. 1 ("Compl.") ¶¶ 1, 21). Specifically, Plaintiffs allege that Defendants[3] failed to remit to Plaintiffs delinquent contributions, dues, and assessments as required by ERISA and the CBA. (Compl. ¶¶ 83, 85). Now before the Court is Plaintiffs' motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. (Dkt. No. 19). Your Honor referred the matter to me for a report and recommendation as to whether Plaintiffs' motion for default judgment should be granted and, if so, what damages, costs, or fees should be awarded. (ECF Order dated 08/07/2019). For the reasons

---

[1] Plaintiffs include several interconnected parties described in greater detail *infra*.

[2] The Complaint also alleged violations of the New York Lien Law, N.Y. Lien L. § 70, *et seq*. (Compl. ¶¶ 1, 87–88, 102–03, 128–29). The New York Lien Law allegations are not relevant to the motion for default judgment now before the Court.

[3] Two of the named Defendants have settled with Plaintiffs and are not named in Plaintiffs' motion for default judgment. Greater detail is included *infra*.

1

set forth below, I respectfully recommend that Plaintiffs' motion for default judgment be granted and that Plaintiffs be awarded: (i) $10,520.67 in interest on contributions Defendant Champion Electrical Mechanical Builders Corp. ("Champion") failed to pay; (ii) $11,671.59 in liquidated damages; (iii) $1,760.00 in audit fees; (iv) $32,343.00 in attorneys' fees; and (v) $662.35 in costs. I further recommend that Plaintiff Bricklayers and Allied Craftworkers Local Union No. 1, New York, B.A.C.I.U., AFL-CIO[4] ("Local 1") be awarded $688.34 in interest on the dues and assessments Champion failed to pay.

1. **BACKGROUND**[5]

   A. **Parties & Procedural History**

   (i) <u>Plaintiffs</u>

Plaintiff Jeremiah Sullivan ("Sullivan") is Local 1's president. (Dkt. No. 21 ("Sullivan Aff.") ¶ 1). Sullivan serves as a Trustee and Administrator of two jointly trusteed "multiemployer" employee benefit plans: (1) the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds, and (2) the Bricklayers Joint Apprentice Training Funds. (Compl. ¶ 4; Sullivan Aff. ¶ 1). These employee benefit plans are collectively referred to as the "PCC Funds." (Compl. ¶ 4). Plaintiffs assert that the PCC Funds are employee benefit plans and multiemployer plans within the meaning of ERISA. (*Id.*). The purpose of the PCC Funds is to collect employee benefit contributions from employers who are signatories to collective bargaining agreements with unions. (*Id.*). The PCC Funds also administer and collect contributions for two non-ERISA funds: (1) the Labor Management Relations Fund and (2) the Promotion Fund (collectively, the "non-ERISA funds"). (Compl. ¶ 6). Finally, the PCC Funds collect dues and assessments from certain employees covered by collective bargaining agreements who authorize their employers to deduct union dues and assessments from their wages, including members of Local 1. (Compl. ¶ 5; Sullivan Aff. ¶ 9).

The PCC Funds are authorized to collect contributions on behalf of Bricklayers and Trowel Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI"). (Sullivan Aff. ¶ 2).[6] Both IPF and IMI are also plaintiffs in this action. Collectively, the PCC Funds, the non-ERISA funds, IPF, and IMI are referred to as "the Funds." Sullivan, Local 1, and the Funds, collectively, are the plaintiffs ("Plaintiffs") in this action.

---

[4] Although these acronyms are not defined in the Complaint or elsewhere on the record, B.A.C.I.U. is seemingly the acronym for the International Union of Bricklayers and Craftworkers. AFL-CIO refers to the American Federation of Labor and Congress of Industrial Organizations.

[5] Unless otherwise indicated, the following factual allegations are taken as true. *See Bricklayers Ins. & Welfare Fund v. R. Smith Restoration*, No. 11-CV-3854 (FB) (RER), 2013 WL 2120306, at *2 (E.D.N.Y. Mar. 8, 2013).

[6] Sullivan is also a Trustee of IMI. (Compl. ¶ 9; Sullivan Aff. ¶ 1).

(ii) <u>Defendants</u>

Plaintiffs bring this motion for default judgment against Champion. Plaintiffs allege that Champion, a company engaged in the construction business, was at all times relevant to this action an "employer" within the meaning of ERISA. (Compl. ¶ 13).

Two additional defendants, P&K Contracting, Inc. ("P&K"), a contractor, and Philadelphia Indemnity Insurance Company ("PIIC"), an insurance company, settled with Plaintiffs in March 2019. (*See* Dkt. No. 16). The Complaint also names as defendants a "John and/or Jane Doe Accountant" (the "DOE Accountant") and Nestor Serrano ("Serrano"), Chief Executive Officer of Champion. (*See* Compl. ¶¶ 15–25). The alleged liability of the DOE Accountant and Serrano is not at issue in this motion. Thus, this motion for default judgment is against Champion only.

**B. Facts Leading to Plaintiffs' Motion for Default Judgment**

(i) <u>The CBA and Relationship Between the Parties</u>

The CBA was negotiated by Sullivan and executed by Champion. (Sullivan Aff. ¶¶ 4, 6). It represents an agreement between Local 1 and a non-party, the Building Restoration Contractors Association. (Compl. ¶ 21; Dkt. Nos. 21-1, 21-2). Pursuant to the CBA, Champion was a subcontractor of P&K. (Dkt. No. 20 ("Pl. Mem.") at 2). P&K contracted with the New York City Housing Authority ("NYCHA") for repairs to various NYCHA buildings and Champion employees performed pointing, cleaning, and caulking work pursuant to P&K's contract with NYCHA. (*Id.* at 2–3). Champion's employees were either members of Local 1, participants in the Funds, or both. (Compl. ¶ 60).

The CBA required Champion to pay wage and wage supplements in the form of fringe benefit contributions to the Funds and to pay dues and assessments to Local 1. (Compl. ¶¶ 42–43). Champion was also obligated to pay additional amounts in the event of delinquency, including interest and liquidated damages. (Pl. Mem. at 8; Dkt. No. 21-1 at 29–30).

As required by the CBA, Champion obtained a surety bond for $50,000.00 from PIIC, indemnifying Champion's obligations to the Funds under the CBA. (Sullivan Aff. ¶ 7; Dkt. No. 21-1 at 36–37).

(ii) <u>Champion's Alleged Delinquency Under the CBA</u>

Plaintiffs allege that beginning around March 7, 2016, Champion failed to submit (1) full payment of benefit contributions to the Funds and (2) dues and assessments to Local 1 for employees performing work covered by the CBA. (Compl. ¶ 53). Plaintiffs allege that the delinquency lasted from March 7, 2016, through June 24, 2017—the period during which Champion employed Local 1 members to perform pointing, cleaning, and caulking work on the NYCHA buildings. (Pl. Mem. at 8–9; Compl. ¶ 81).

Between May 10, 2017, and August 9, 2017, Local 1 and the Funds assert that they sent four letters informing Defendants of delinquencies on wages, contributions, dues, and assessments. (*See*

3

Compl. ¶¶ 72–75).[7] Plaintiffs then retained Kobgo Associates, Inc. ("Kobgo") to conduct a payroll compliance audit of Champion (the "Audit") for the period of March 7, 2016, through June 24, 2017. (Dkt. No. 22 ("Duravcevic Aff.") ¶ 5). In a report issued November 30, 2017, Kobgo determined that Champion's delinquency of fringe benefit contributions and union dues amounted to $62,601.23. (*Id.*; Dkt. No. 22-1). Kobgo never received any objection to the Audit from Champion. (Duravcevic Aff. ¶ 8). Following the Audit, Plaintiffs attempted to contact Champion several more times before commencing this action. (Dkt. No. 23 ("Dell Decl.") ¶¶ 13–14; Compl. ¶¶ 78–80).[8]

    (iii)    <u>Plaintiffs' Motion for Default Judgment</u>

Following numerous unsuccessful attempts to reach Champion, on October 9, 2018, Plaintiffs commenced this action.

Plaintiffs properly served the Summons and Complaint on Champion on November 27, 2018. (*See* Dkt. No. 7). Champion did not answer or respond in any way within the allotted timeframe or at any time thereafter, prompting Plaintiffs to request a Certificate of Default from the Clerk of Court. (Dkt. No. 12). The Clerk entered a Certificate of Default against Champion on January 7, 2019. (Dkt. No. 13). On August 8, 2019, Plaintiffs' counsel served Champion with notice of the Motion for Default Judgment via mail to Champion's last known address. (*See* Dkt. No. 24). Champion has not answered, appeared through counsel, or otherwise moved with respect to the Complaint since receiving Plaintiffs' Motion. (Pl. Mem. at 5). Plaintiffs seek an award against Champion[9] satisfying interest, liquidated damages, audit fees, and attorneys' fees, costs, and expenses relating to the action. (Pl. Mem. at 16). Plaintiffs request a total damages award of $57,645.95. (*Id.* at 16–17).

---

[7] Plaintiffs represent that they sent the following notices to Champion prior to conducting an audit in November 2017: (1) a May 10, 2017 letter sent by Local 1 on its own behalf informing Champion of habitual delinquency (Compl. ¶ 72); (2) a June 23, 2017 letter sent by Plaintiffs' counsel (Compl. ¶ 73); (3) a June 29, 2017 letter sent by Plaintiffs' counsel via certified mail further informing Defendants (including Champion) of delinquency and including copies of steward reports, a spreadsheet detailing the delinquency, and a copy of the surety bond supplied by PIIC (Compl. ¶ 74); and (4) an August 9, 2017 letter to Champion demanding Champion submit payment for the contributions, dues, and assessments due to Plaintiffs. (Compl. ¶ 75).

[8] Plaintiffs represent that they sent the following notices to Champion between the date of the Audit in November 2017 and commencing this action in October 2018: (1) a February 5, 2018 notice informing Defendants that contributions, dues, and assessments were due on the NYCHA contract (Dell Decl. ¶ 13; Compl. ¶ 78; Pl. Mem. at 4; *see* Dkt. No. 23-6); (2) an April 10, 2018 letter again notifying Defendants of delinquencies (Dell Decl. ¶ 14; Compl. ¶ 79; Pl. Mem. at 4; *see* Dkt. No. 23-7); and (3) Plaintiffs aver that Champion was notified by the May 4, 2018 letter addressed to Defendant P&K (Pl. Mem. at 4). The Court notes, however, that the May 4, 2018, letter that Plaintiffs provided to the Court does not indicate that Champion was sent a copy. (*see* Dkt. No. 23-8 at 4).

[9] As noted *supra*, Defendants P&K and PIIC appeared in the case and reached settlement with the Funds in March 2019. The motion for default judgment is brought solely against Defendant Champion. Because of the settlement with P&K and PIIC, Plaintiffs do not seek the principal amount owed to the Funds under the Audit from Champion. (*See* Dell Decl. ¶ 18).

## 2. LEGAL STANDARDS

Default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"). Rule 55 lays out a two-step procedure for obtainment of a default judgment. *Tr. of the Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Ctr. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *4 (E.D.N.Y. Aug. 2, 2019), *R & R adopted by* 2019 WL 3936676 (Aug. 20, 2019).

First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, once the clerk enters the default, "the party seeking relief 'must apply to the court for a default judgment.'" *Tr. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Tri State Constr. & Masonry Corp.*, No. 15-CV-6686 (RJD) (RER), 2017 WL 9485701, at *1 (E.D.N.Y. May 11, 2017), *R & R adopted by* 2017 WL 2559126 (June 13, 2017) (quoting Fed. R. Civ. P. 55(b)(2).

In the Second Circuit, "defaults are 'generally disfavored' and 'reserved for rare occasions.'" *Leather Goods*, 2019 WL 3937132, at *4 (quoting *Enron Oil Corp. v. Daikuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Even if a defendant is in default, a plaintiff is not automatically entitled to a default judgment. *See Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (Dec. 21, 2009). The ultimate "decision to grant a motion for default judgment is left to the sound discretion of the court." *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

To obtain a default judgment, a plaintiff must demonstrate that these well-pleaded facts wholly establish defendant's liability. *Said v. SBS Electronics*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *R & R adopted as modified by* 2010 WL 1287080 (Mar. 31, 2010) (adopting the recommendations except as to the amount of the default judgment). Though the court may conduct a hearing to "ensure that there is a basis for the damages," it may also rely on affidavits and other evidence documenting the damages. *Masino v. Architectural Pavers Corp.*, No. 09-CV-2213 (DLI) (RER), 2010 WL 415286, at *2 (E.D.N.Y. Jan. 15, 2010). A party's default is deemed to establish "an admission of all well-pleaded factual allegations of liability set forth in the complaint." *Masino*, 2010 WL 415286, at *2.

A "defendant's default is not deemed to constitute an admission of allegations relating to damages…the plaintiff has to prove them" *Id.* at *2. Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; (e) other relief the court deems appropriate. 29 U.S.C. § 1132(g)(2).

5

## 3. DISCUSSION

### a. Basis for ERISA Liability

Here, Plaintiffs contend liability is proper because their allegations sufficiently establish that Champion violated the CBA and ERISA.[10] (Pl. Mem. at 8). Specifically, Plaintiffs allege that Champion violated Section 515 of ERISA, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Section 502 of ERISA allows a litigant to bring a civil action for relief when an employer violates Section 515 of ERISA. *Trs. of Local 813 Ins. Trust Fund v. All County Funeral Service, Inc.*, No. 18-CV-787 (ENV) (RER), 2019 WL 5088285, at *2 (E.D.N.Y. Aug. 7, 2019) (citing 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(d)(1)), *R & R adopted by* 2019 WL 5087097 (Oct. 10, 2019).

Plaintiffs have adequately plead a violation of ERISA Section 515 and the CBA. The PCC Funds are employee benefit plans and multiemployer plans within the meaning of ERISA, (Compl. ¶ 4), Local 1 is a labor organization within the meaning of ERISA, (*id.* ¶ 10), and Champion is an employer within the meaning of ERISA, (*id.* ¶ 13).[11]

The CBA, executed and signed by Champion's accountant, establishes that Champion agreed to be bound by its terms. (Dkt. No. 21-2).[12] As additional evidence of Champion's intent to be bound by the CBA, Champion secured a surety bond from PIIC, signed by Serrano, clearly indicating that Champion is "held and firmly bound unto the Pointers, Cleaners & Caulkers Local Union No. 1 Fringe Benefit Funds, enumerated in the collective bargaining agreement . . ." (Dkt. No. 21-3).

---

[10] Liability under ERISA and collective bargaining agreements go hand-in-hand. Although ERISA does not require employers to provide employee benefits, once an employer elects to provide employee benefits under the statute, "ERISA regulates the terms of administration," and requires employers to provide benefits "in accordance with the relevant … collective bargaining agreement." *Finkel v. Metro Elec. Control Sys. Ltd.*, No.10-CV-2012 (CBA) (JO), 2012 WL 4049803 (E.D.N.Y. Aug. 17, 2012), at *4, *R & R adopted by* 2012 WL 4049933 (Sept. 13, 2012).

[11] An employer in the context of ERISA is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S Code § 1002(5). Plaintiffs allege the well-pleaded fact that Champion employed individuals to perform pointing, cleaning, and caulking work on the NYCHA Contract. (Compl. ¶ 60). Therefore, Champion falls within ERISA's definition of employer.

[12] Champion's accountant executed the CBA on behalf of him or herself and the company. (Sullivan Aff. ¶ 6; Compl. ¶¶ 21, 28).

The CBA dictates that Champion must pay contributions to each of the Funds for all employees covered by the CBA for the period of July 1, 2015, through June 30, 2019, and deduct and remit dues and assessments for all Local 1 members. (Sullivan Aff. ¶¶ 8–9; *see* Dkt. No. 21-1 (listing the time period covered by the CBA)). Champion must also prepare monthly reports describing the hours worked by its employees and amount of contributions, dues, and assessments due for each employee, regardless of whether any work was performed by Champion employees under the CBA that month. (Sullivan Aff. ¶ 10; Dkt. No. 21-1 at 27 (CBA, Article XV, Section 4, listing the employer's monthly reporting obligations to the Funds)).

Plaintiffs' well-pleaded allegations, together with the Kobgo Audit (*see* Dkt. No. 22), establish that Champion has not complied with its obligations under the CBA because it failed to make the required payments. Audit reports may be relied on to prove defendant employers did not make required contributions to a fund if the audit report "contains 'sufficient information to enable the Court to determine the amount of delinquent contributions.'" *All County Funeral Service, Inc.*, 2019 WL 5088285, at *3 (quoting *Hanley v. Orient Beach Club, Inc.*, No. 96-CV-4478 (AJP) (MGC), 1998 WL 65990 at *5 (S.D.N.Y. Feb. 18, 1998)). Here, Plaintiffs submitted an affidavit by George Duravcevic, Payroll Audit Manager at the firm, who conducted the Audit. (*See* Duravcevic Aff.). In his affidavit, Duravcevic explains how Kobgo calculated Champion's delinquency—by examining weekly certified payroll reports and reviewing shop steward reports. (*Id*. ¶ 6). Attached to the affidavit, Duravcevic included a true and correct copy of the full Audit complete with worksheets detailing delinquency schedules. (*See* Dkt. No. 22-1). The amount of documentation provided to the Court by Plaintiffs is sufficient to enable the Court to determine the amount of delinquent contributions. *See, e.g.*, *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 273 (E.D.N.Y. 2014); *Trs. of Local 7 Tile Indus. Welfare Fund v. Caesar Max Tile Corp.*, No. 13-CV-924 (RRM) (VMS), 2014 WL 991723 at *4 (E.D.N.Y. Mar. 13, 2014).

In addition to the Audit and Duravcevic affidavit, Plaintiffs provided the Court with Sullivan's sworn affidavit, which corroborates Champion's failure to comply with the CBA requirements. (Sullivan Aff. ¶¶ 21–23). Sullivan also provided detailed pay schedules ("Rate Sheets") for the period of July 1, 2015, through June 30, 2016, and July 1, 2016 through June 20, 2017, which list both hourly wage rates and hourly benefit rates Local 1 members were entitled to during the period. (Dkt. No. 21-4). The Rate Sheets, along with the documentation provided in the Audit, allow the undersigned to determine the amount of delinquent contributions. Finally, Plaintiffs' attorney Carol Dell submitted a sworn declaration to which she attached a spreadsheet detailing delinquency calculations based on the Audit information. (Dkt. No. 23-9). With this documentation, Plaintiffs have demonstrated that the uncontroverted allegations establish Champion's liability under the CBA, and thus under ERISA as well.

      b.   *Basis for Liability under the LMRA*

In their Complaint, Plaintiffs also alleged liability under the LMRA. (Compl. ¶¶ 1, 3, 10, 13, 16, 22). The LMRA "vests the Court with jurisdiction over civil actions for violations of contracts between an employer and a labor organization" that affect commerce. *Trs. of the Local 7 Title Indus. Welfare Fund v. City Title, Inc.*, No. 10-CV-322 (SJ) (ALC) 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *R & R adopted by* 2011 WL 864331 (Mar. 10, 2011). "Under Section

7

301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987 at *3 (E.D.N.Y. Aug. 30, 2011), *R & R adopted by* 2011 WL 5402898 (Nov. 4, 2011).

Here, Plaintiffs allege that Champion failed to remit dues and assessments to Local 1 between March 7, 2016, and June 24, 2017. (Compl. ₱ 85). The Audit also establishes a failure to pay dues and assessments to Local 1 during that period. (Sullivan Aff. ₱ 19; Duravcevic Aff. ₱ 5). This failure constitutes a breach of Article XIV of the CBA, which requires Champion to deduct and remit dues and assessments for all Local 1 members. (Dkt. No. 21-1 at 25; Sullivan Aff. ₱ 9). Because a violation of the CBA establishes a violation of Section 301 of the LMRA, Champion may be held liable for failing to pay assessments and remit dues to Local 1 under the LMRA. *See e.g., Sullivan*, 2011 WL 5401987 at *3 (finding liability under the LMRA where plaintiffs alleged a breach of a collective bargaining agreement); *Tri State Constr. & Masonry Corp.*, 2017 WL 9485701, at *3 (finding liability under the LMRA where plaintiffs alleged defendant had failed to remit contributions and dues check-offs in violation of a collective bargaining agreement).

The undersigned finds that Plaintiffs have sufficiently established liability under ERISA, the LMRA, and the CBA, for the reasons stated herein.

### A. Damages

Because the unpaid contributions have already been paid by PIIC and P&K pursuant to their settlement agreement with Plaintiffs, (Pl. Mem. at 1; Dell Decl. ¶ 18; Dkt. No. 21-5), Plaintiffs seek only interest, liquidated damages, and costs and fees from Champion. In total, plaintiffs seek judgment of $57,645.95 consisting of: (1) ten percent interest on contributions in the amount of $10,520.67; (2) nine percent interest on the dues and assessments in the amount of $688.34; (3) liquidated damages on the contributions in the amount of $11,671.59; (4) audit fees in the amount of $1,760.00; (5) attorney's fees in the amount of $32,343.00; and (6) costs and expenses in the amount of $662.35. (Pl. Mem. at 11–12). Plaintiffs have submitted sufficient evidentiary support for their claims in the form of counsel's declaration, the Audit report, and the sworn Sullivan Affidavit. For the reasons detailed below, I recommend that Plaintiffs' request for damages be granted in part.

(i) <u>Interest</u>

Plaintiffs seek interest on delinquent contributions and Local 1 seeks interest on dues and assessments.

a. *Interest on contributions*

"ERISA provides for the payment of 'interest on the unpaid contributions … [at] the rate provided under the plan.'" *Tri State Constr. & Masonry Corp.*, 2017 WL 9485701, at *5 (quoting 29 U.S.C. § 1132(g)(2)). Here, the CBA establishes an annual interest rate of ten percent on delinquent fringe benefits. (*See* Dkt. 21-1 at 29–30 (CBA Article XV 7(e)); *see also* Sullivan Aff. ¶ 16).

Plaintiffs seek interest on $58,357.97 in delinquent contributions to the Funds. (Compl. ¶ 81; Pl. Mem. at 11).[13] To calculate interest on the unpaid contributions, Plaintiffs first converted the balance Champion owed to the Funds in contributions for each month the Audit revealed a delinquency—April, May, and June of 2017—into a daily rate. (Dell Decl. ¶ 25; *see* Dkt. No. 23-9 at 2). For each month, Plaintiffs then multiplied the daily rate by the number of days between when the contributions became due (under the CBA, contributions are due the fifteenth day of the month following the month in which the hours were worked) and when P&K and PIIC paid the owed contributions as a part of the settlement agreement (April 1, 2019). (Dell Decl. ¶ 25; Pl. Mem. at 11). For example, the Audit revealed Champion owed $19,062.99 in ERISA contributions to the PCC Funds on work performed in April 2017. (Dkt. No. 23-9 at 2). The daily interest rate for this delinquency is $5.22[14]; which, after being multiplied by the number of days between May 15, 2017, and April 1, 2019,[15] reveals interest owing in the amount of $3,582.80 for the month of April 2017. (*Id.*). Repeating this calculation for each month, I calculate the total interest owed on the delinquent contributions amounts to $10,520.67, the same amount requested by Plaintiffs.[16] (Dell Decl. ¶ 25). I therefore respectfully recommend that Plaintiffs be awarded $10,520.67 in interest on unpaid contributions to the Funds.

### b. *Interest on dues and assessments*

Plaintiffs also contend that Local 1 is owed interest on $4,243.22 in delinquent dues and assessments for the period of March 7, 2016, through June 24, 2017. (Pl. Mem. at 11; Compl. ¶ 81; Dell Decl. ¶ 27).[17] "With respect to the Non-ERISA plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the court's discretion." *Finkel v. Triple A Group*, 708 F. Supp. 2d 277, 287 (E.D.N.Y. 2010) (*citing Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 446–47 (2d Cir. 1975). "In awarding interest [on unpaid dues], a court may look to state law to determine an appropriate rate." *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873 (ENV) (JO), 2011 WL 1100111 at *4 (E.D.N.Y. Mar. 22, 2011).

Here, Plaintiffs seek a nine percent annual interest rate on the delinquent dues and assessments pursuant to §§ 5001 and 5004 of the New York Civil Practice Law and Rules ("CPLR"). (Dell Decl. ¶ 29). This is an appropriate interest rate on the unpaid dues and assessments owed to Local 1. *See, e.g. Bricklayers Ins. & Welfare Fund v. Verse Inc.*, No.12-CV-4271 (FB) (JMA), 2013 WL

---

[13] The Audit reveals a total delinquency in contributions, dues, and assessments of $62,601.23. (Duravcevic Aff. ¶ 7). Plaintiffs provide a breakdown of this number; attributing $58,357.97 to unpaid contributions and $4,243.22 in delinquent union dues and assessments owed to Local 1. (Dell Decl. ¶¶ 23, 27). An astute reader will note that there is a difference of four cents between the amount revealed by the Audit ($62,601.23) and the total of the breakdown provided by Plaintiffs ($62,601.19). The Court presumes this is due to differences in decimal units used during calculations. The Court relies on Plaintiffs' assignment of the relevant delinquencies.

[14] The daily rate is calculated using the following formula: [ .1 interest rate] / [365 days] X [balance due that month].

[15] 686 days.

[17] The PCC Funds also collect dues and assessments for non-ERISA funds. (Compl. ¶ 6).

9

4883966 at *6 (E.D.N.Y. Sept. 11, 2013) (finding nine percent in accordance with CPLR § 5004 and an appropriate interest rate on unpaid dues an assessments).

To calculate interest on the unpaid dues and assessments, Plaintiffs use the same formula used to calculate interest on unpaid contributions. (*See* Dell Decl. ¶ 29; *supra* Section 3(A)(i)(a)). Article XV of the CBA requires Champion to remit dues and assessments on the fifteenth day of the month following the month in which the work was performed. (Dell Decl. ¶ 29; Sullivan Aff. ¶ 10; Dkt. No. 21-1 at 27). By my calculation, Plaintiffs are owed $688.34 interest at a nine percent per year rate from the date the dues and assessments became due until the payments by P&K and PIIC on April 1, 2019.

(ii)     Liquidated Damages

In addition to interest on unpaid contributions, ERISA provides for "an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C). Article XV, Section 7(e) of the CBA provides for: (1) an additional payment of five percent of the amount owing; (2) another five percent if an audit is required; (3) a further five percent if legal counsel is retained; and (4) if litigation is instituted, the greater of an additional five percent or $500 per fund, whichever is greater. (Dkt. No. 21-1 at 29–30).

As assessed *supra*, interest on unpaid contributions is $10,520.67. Twenty percent of the unpaid contributions amounts to $11,671.59.[18] Accordingly, I respectfully recommend that Plaintiffs be awarded the greater of the two, $11,671.59, in liquidated damages on unpaid contributions.

(iii)    Audit Fees

Plaintiffs ask the Court to award Audit fees. (Pl. Mem. at 12–13). In his sworn affidavit, the auditor confirmed Audit fees totaled $1,760.00. (Duravcevic Aff. ¶ 9). "[A]lthough ERISA does not expressly provide compensation for audit fees, courts have generally allowed recovery 'under Section 1132(g)(2)(E) of ERISA.'" *Caesar Max Tile Corp.*, 2014 WL 991723 at *11 (quoting *La Barbera v. Federal Metal & Glass Corp.* 666 F. Supp. 2d 341, 353 (E.D.N.Y. 2009). 29 U.S.C. § 1132(g)(2)(E) provides for "such other legal or equitable relief as the court deems appropriate." Therefore, I recommend that Plaintiffs be awarded $1,760.00 in Audit fees.

**B. Attorneys' Fees, Costs and Expenses**

Plaintiffs correctly assert that they are entitled to attorneys' fees under ERISA. 29 U.S.C. § 1132(g)(2)(D). Furthermore, Article XV, Section 7(e) of the CBA holds Champion liable for "attorney's fees provided for pursuant to the civil enforcement of provisions of the Employee Retirement income Security Act…" (Dkt. No. 21-1 at 30).

---

[18] Based on unpaid contributions of $58,357.97.

In the Second Circuit, the district courts are instructed to determine "what rate a paying client would be willing to pay," or the "presumptively reasonable fee" when determining how much to award in attorney's fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). Next, the court must determine whether the total number of hours claimed is reasonable. *Leather Goods*, 2019 WL 3937132, at *13. "The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged." *Caesar Max Tile Corp.*, 2014 WL 991723 at *10.

(i)  Reasonable Hourly Rate

Here, Plaintiffs seek reimbursement for hourly rates of: $270.00 for Carol Dell, a partner who has practiced Labor Law and ERISA litigation since 2001; $220.00 for Katherine M. Morgan, an associate who has specialized in Labor Law and ERISA litigation since 2014; and $95.00 each for two paralegals and one law clerk. (Dell Decl. ¶ 36–38). These rates are in line with or below similar rates for unpaid contributions ERISA cases in this district. *See, e.g.*, *Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Trust Funds of the Int'l Union of Operating Eng'rs. v. Coastal Envtl. Grp. Inc.*, 18-cv-5773 (AMD) (ST), 2019 WL 4603805 at *13 (E.D.N.Y. Sept. 5, 2019) (awarding attorney's fees at an hourly billing rate of $380.00 in an ERISA action), *R & R adopted by* 2019 WL 4602851; *Div. 1181 Amalgamated Transit*, 270 F. Supp. 3d at 618–19 (reiterating a recognized appropriate range of $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $70 to $100 per hour for paralegals); *Caesar Max Tile Corp.*, 2014 WL 991723 at *10 (stating that in "…the Eastern District of New York, reasonable hourly rates in ERISA cases have ranged from $200.00 to $350.00 an hour for partners and $90.00 an hour for paralegals."). Because I find the proposed rates reasonable and in line with the standard rates for ERISA litigators in this District, I recommend awarding attorneys' fees at the rates suggested by Plaintiffs.

(ii)  Reasonable Hours Expended

After finding the hourly rate reasonable for ERISA default cases in this jurisdiction, the Court now turns to the reasonableness of the hours expended. "If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction." *Manzo v. Sovereign Motor Cars, Ltd.*, 08-cv-1229 (JG) (SMG), 2010 WL 1930237 at *8 (E.D.N.Y. May 11, 2010). Plaintiffs seek $32,343.00 attorneys' fees for 149.9 hours[19] of work expended on this case since March 1, 2018. (Dell Decl. ¶ 30). These hours are extremely high for ERISA default judgement cases. *See, e.g.*, *Leather Goods*, 2019 WL 3937132, at *13 (finding 58.25 hours to "far exceed the norm" for in an ERISA default action); *Caesar Max Tile Corp.*, 2014 WL 991723 at *11 (finding 22.2 hours reasonable); *Masino*, 2010 WL 415286 at *4 (finding 9.20 hours reasonable on ERISA default judgment). However, given the complexity of the damage calculations, the detailed submissions prepared by Plaintiffs' attorneys, and their successful efforts to settle with Defendants P&K and PIIC for the payment of Champion's

---

[19] This number was calculated by the Court using records provided by Plaintiffs. (*See* Dkt. No. 23-10). Plaintiffs did not provide us a total number of hours worked.

delinquency, such use of time was not excessive, redundant, otherwise unnecessary. Consequently, I recommend awarding attorneys' fees of $32,343.00.

    (iii)   <u>Costs</u>

Plaintiffs also seek costs expended in the course of this litigation under ERISA. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs seek $662.35 for filing fees, cost of service, printing, postage, fax machine charges, and copies. (Dell Decl. ¶¶ 30; 40). "In a successful action to recover delinquent contributions, an award of reasonable costs is mandatory, and courts will generally award the plaintiff '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" *Masino*, 2010 WL 415286 at *5 (quoting *Trs. Of the Road Carriers Local Welfare Fund v. Goldberg*, No. 08-CV-0884 (RRM) (MDG), 2009 WL 3497493 (E.D.N.Y. Oct. 28, 2009). I find the requested costs to be reasonable as compared to similar cases in this district, and therefore recommend awarding $662.35 in costs. *See e.g. Tri State Constr. & Masonry Corp.*, 2017 WL 9485701, at *8 (finding reasonable $647.21 for court filing fees, postage, and related costs); *Gesualdi*, 5 F. Supp. 3d at 282 (finding reasonable $890 in court filing fee, service of process fees, deposition transcript fees and the costs of photocopying and postage).

## 4. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court grant Plaintiffs' motion for Default Judgment. I further recommend that Plaintiffs' motion for default judgment be granted and that Plaintiffs be awarded: (i) $10,520.67 in interest on contributions Defendant Champion failed to pay; (ii) $11,671.59 in liquidated damages; (iii) $1,760.00 in audit fees; (iv) $32,343.00 in attorneys' fees; and (v) $662.35 in costs. Additionally, I recommend that Plaintiff Local 1 be awarded $688.34 in interest on the dues and assessments Defendant Champion failed to pay.

I direct Plaintiffs to serve copies of this Report and Recommendation on Champion by regular and certified mail and to file proof of service on CM/ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 36(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

    SO ORDERED.

*Ramon E. Reyes, Jr.*
Ramon E. Reyes, Jr.
U.S. Magistrate Judge

Dated:  February 25, 2020
         Brooklyn, NY